UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>GEORGANA MASCIO,<br><br>Debtor. | Bankruptcy Case No. 25-10678 TBM<br>Chapter 7 |
| INDVR BRANDS, INC.<br>INDVR BRANDS U.S., INC.,<br><br>Plaintiffs,<br><br>v.<br><br>GEORGANA MASCIO,<br><br>Defendant. | Adv. Pro. No. 25-1150 TBM |

**ORDER DENYING MOTION TO DISMISS**

I.   **Introduction.**

This dispute stems from a cannabis industry deal gone bad.  The Debtor-Defendant, Georgana Mascio (the "Debtor"), was the owner of Cannabis Corporation ("Cannabis"), a marijuana producer and retail dispensary.  In 2021, the Debtor and Cannabis commenced a lawsuit in state court against Plaintiffs, INDVR Brands, Inc. ("INDVR Canada") and INDVR U.S., Inc. ("INDVR U.S.") (together, the "Plaintiffs"), captioned:  *Cannabis Corp. and Georgana Mascio v. INDVR Brands, Inc. and INDVR Brands U.S., Inc.*, Case No. 21-CV-30686 (District Court, Denver County, Colorado) (the "State Court Action").  The Plaintiffs counterclaimed.  On May 10, 2024, the District Court for Denver County, Colorado (the "State Court") issued "Findings of Fact and Conclusions of Law and Judgment" (the "Judgment") in the State Court Action in favor of the Plaintiffs and against the Debtor and Cannabis.  In the Judgment, the State Court held the Debtor and Cannabis jointly and severally liable for $37,398,774.04 in damages, plus interest.  Later, the State Court increased the amount of the Judgment.  The Debtor appealed but the appeal has not been decided.

Meanwhile, on February 7, 2025, the Debtor filed for protection under Chapter 7 of the Bankruptcy Code[1] in the main bankruptcy case captioned: *In re Georgana Mascio*, Case. No. 25-10678 TBM (Bankr. D. Colo.) (the "Main Case"). Subsequently, the Plaintiffs, as creditors, commenced this Adversary Proceeding, *INDVR Brands Inc. et al. v. Mascio (In re Mascio)*, Adv. Pro. No. 25-1150 (Bankr D. Colo.)(the "Adversary Proceeding"), by filing a "Complaint." (Docket No. 1, the "Complaint.")[2] Through the Complaint, the Plaintiffs objected to the Debtor's bankruptcy discharge under Sections 727(a)(2), (a)(3) and (a)(4)(A). Additionally, the Plaintiffs requested a determination that the debt set forth in the Judgment be determined to be nondischargeable per Sections 523(a)(4) and (a)(6).

Rather than filing an answer to the Complaint, the Debtor, apparently acting on a *pro* se basis,[3] submitted her "Motion to Dismiss or Strike Adversary Complaint for Lack of Standing, Bad Faith Filings, and Material Misrepresentations." (Docket No. 5, the "Motion to Dismiss.") The Plaintiffs filed an "Opposition to Defendant Georgana Mascio's Motion to Dismiss or Strike the Complaint." (Docket No. 6, the "Opposition.") Shortly thereafter, the Debtor submitted her "Reply in Support of Combined Motion to Dismiss and to Strike." (Docket No. 7, the "Reply.") For the reasons set forth below, the Court denies the Motion to Dismiss.

## II.     Jurisdiction and Venue.

The Court has subject matter jurisdiction over this Adversary Proceeding concerning the Debtor's entitlement to a discharge and the dischargeability of particular debts pursuant to 28 U.S.C. § 1334. This dispute is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B), (b)(2)(I) and (b)(2)(J), because it seeks a determination as to the dischargeability of a particular debt and a challenge to the Debtor's entitlement to a discharge. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

---

[1]     All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

[2]     The Court will refer to documents filed in the CM/ECF docket for this Adversary Proceeding, using the convention: "Docket No. ___ ."

[3]     The Debtor purports to be unrepresented by counsel in this Adversary Case although she has legal counsel in the Main Case. "The court, therefore, 'review[s] h[er] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys.'" *Heath v. Root9B*, 2019 WL 1045668, at *2 (D. Colo. Mar. 4, 2019) (quoting *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted)). *See also, Thompson v. Coulter*, 680 Fed. Appx. 707, 710 (10th Cir. 2017); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court "'cannot take on the responsibility of serving as the litigant's attorney in constructing arguments' or the 'role of advocate' for a pro se plaintiff." *Root9B*, 2019 WL 1045668 at *3 (quoting *Garrett*, 425 F.3d at 840). The pro se plaintiff is required to follow the same rules of procedure that other litigants must abide by. *Garrett*, 425 F.3d at 840 (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)). Given the complexity of bankruptcy litigation, the Court encourages the Debtor to retain legal counsel.

2

### III.     Procedural Background.

The Plaintiffs filed the Complaint on May 5, 2025.  The Plaintiffs requested that the Court deny the Debtor's discharge under Section 727(a)(2), (a)(3), and (a)(4)(A).  Furthermore, the Plaintiffs asked that the Debtor's debt owed to the Plaintiffs be determined to be nondischargeable under Sections 523(a)(4) and ((a)(6).   The Debtor responded to the Complaint with the Motion to Dismiss. The Debtor asserts six arguments for dismissal:  (1) the Plaintiffs lack standing and capacity to sue; (2) the Plaintiffs misrepresented their business location and existence; (3) the Complaint fails to state a claim for relief; (4) the Plaintiff's fraud claims are not pled with particularity; (5) issue preclusion does not apply; and (6) the Complaint was filed in bad faith and lacks evidentiary support.  (Docket No. 5 at 2-3.)  The Plaintiffs contest the Motion to Dismiss and submitted the Opposition.  Thereafter, the Debtor filed the Reply in support of the Motion to Dismiss.  The issues raised by the Motion to Dismiss, Opposition, and Reply are fully briefed and ripe for adjudication.

### IV.     Legal Standards for Motions to Dismiss.

The Motion to Dismiss states that it is made "pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 9(b), 12(f), and 11, as incorporated by Bankruptcy Rules 7012, 7009 and 9011."  Although the Motion to Dismiss is far from a model of clarity, the Court construes the Motion to Dismiss as being based <u>only</u> on Fed. R. Civ. P. 12(b)(6) and 9(b), as incorporated by Fed. R. Bankr. P. 7012 and 7009, for the following reasons:

First, with respect to Fed. R. Civ. P. 12(b)(1), as incorporated by Fed. R. Bankr. P. 7012, that provision states that "a party may assert the following defenses by motion . . . lack of subject-matter jurisdiction."  However, the phrase "subject-matter jurisdiction" is not mentioned anywhere in the Motion to Dismiss.  The Debtor has not presented any argument about lack of subject-matter jurisdiction.  So, the Debtor has improperly referenced Fed. R. Civ. P. 12(b)(1), which does not apply to the Motion to Dismiss.

Second, with respect to Fed. R. Civ. P. 12(f), as incorporated by Fed. R. Bankr. P. 7012, that provision states: "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The Motion to Dismiss does not deal with an "insufficient defense" and does not identify any "redundant, immaterial, impertinent, or scandalous matter."  The Debtor has not presented any argument within the purview of Fed. R. Civ. P. 12(f).  So, the Debtor has improperly referenced Fed. R. Civ. P. 12(f), which does not apply to the Motion to Dismiss.

Third, with respect to Fed. R. Civ. P. 11, technically, that provision has not been incorporated directly into the Federal Rules of Bankruptcy Procedure.  However, Fed. R. Bankr. P. 9011 is similar to Fed. R. Civ. P. 11 and provides, among other things: " A motion for sanctions must be made separately from any other motion or request . . . [and] [t]he motion for sanctions must not be filed or presented to the court if the

3

challenged document . . . is withdrawn or corrected within 21 days after the motion was served . . . ." Fed. R. Bankr. P. 9011(c)(2)(A) and (c)(2)(B). The Debtor's request for sanctions in the Motion to Dismiss must be summarily denied because the Debtor did not file such motion "separately from any other motion or request." Also, the Debtor has not demonstated her compliance with the safe harbor requirement of Fed. R. Bankr. P. 9011(c)(2)(B). Under the safe harbor provision, the movant must present the motion to the alleged violator *before* filing it with the court to afford the alleged violator the opportunity to correct or withdraw the document which allegedly violates Rule 9011(b). "This safe harbor requirement is strictly applied in federal court, such that the failure to comply with it results in rejection of a motion for sanctions." *Advanced Coatings Int'l, Inc. v. Johnson (In re Johnson)*, 485 B.R. 642, 649 (Bankr. D. Colo. 2013) (citing *Roth v. Green,* 466 F.3d 1179, 1192–93 (10th Cir. 2006); *Bergquist v. Caskie–Johnson (In re Caskie–Johnson),* 2007 WL 496675, at *3 (D. Colo. Feb. 13, 2007)). *Johnson* further observed that:

> Strict enforcement serves the policies behind the safe harbor requirement: "(1) to protect litigants from sanctions whenever possible in order to mitigate Rule 9011's chilling effect; (2) to formalize procedural due process considerations such as notice; and (3) to encourage withdrawal of papers that violate the rule without involvement of the trial court, thereby streamlining the litigation process."

*Johnson*, 485 B.R. at 649 (quoting *Caskie–Johnson,* 2007 WL 496675 at *4). Finally, the Debtor did not properly develop any Fed. R. Bankr. P. 9011 argument. And, Fed. R. Civ. P. 9011 is not a basis for dismissal of a complaint in an Adversary Proceeding.

Accordingly, the Court considers only the legal standards applicable to motions to dismiss under Fed. R. Civ. P. 12(b)(6) and (9)(b), as incorporated by Fed. R. Bankr. P. 7012 and 7009.

A. <u>**Law Applicable to Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)**</u>.

Fed. R. Civ. P. 12(b)(6) provides:

> (b) Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion . . .
>
>> (6) failure to state a claim upon which relief can be granted.

When considering a motion to dismiss under Fed R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded factual allegations in a complaint and view them in the light most favorable to the plaintiff. *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is

Case:25-01150-TBM   Doc#:9   Filed:08/08/25   Entered:08/08/25 13:25:35   Page5 of 18

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is considered "plausible" when the complaint contains facts which allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Plausible" does not mean "probable", although the plaintiff must show that its entitlement to relief is more than speculative. *See id.* ("Determining whether a complaint states a plausible claim for relief will. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"); *Twombly*, 550 U.S. at 556 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement").  If the allegations in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (citation omitted).  Put another way, "the complaint must give the Court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Court is bound to accept well-pleaded factual allegations as true but will not give deference to legal conclusions.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Legal conclusions must be supported by well-pleaded factual allegations, which can be assumed as true and evaluated as to whether they plausibly give rise to the requested relief. *Id.* at 679.  This process is "a context-specific task" which depends on the elements of a particular claim and requires the Court "to draw upon its judicial experience and common sense." *Burnett*, 706 F.3d at 1236 (quoting *Iqbal*, 556 U.S. at 679).  Careful evaluation is necessary to ensure that defendants are sufficiently able to prepare their defenses and avoid facially groundless litigation.

Ultimately, the critical question is: "assum[ing] the truth of all well-pleaded facts . . . and draw[ing] all reasonable inferences therefrom in the light most favorable to the plaintiffs," whether the complaint "raise[s] a right to relief above the speculative level.'" *Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).  It is a very low threshold.  "[G]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias*, 567 F.3d at 1178 (quoting *Duran v. Carris,* 238 F.3d 1268, 1270 (10th Cir. 2001)) (brackets in original).  Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, (1974)).

Notably, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is not a mechanism to dispute the facts. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted."). Accordingly, when ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court "must examine only the plaintiff's complaint [and] must determine if the complaint alone is sufficient to state a claim." *Jackson v. Integra, Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991); *see also Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001) (generally "unacceptable for a court" to look "beyond the four corners of the complaint" when deciding a "Rule 12(b)(6) motion to dismiss"); *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991) (same). The Court "cannot review matters outside of the complaint." *Integra*, 952 F.2d at 1261.

In deciding whether materials are "outside the complaint," the Court obviously considers exhibits physically appended to the complaint as part of the complaint. Additionally:

> . . . if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss . . . .

*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997) (citations omitted); *Burke v. Holdman*, 750 Fed. Appx. 616, 620 (10th Cir. 2018) (unpublished).

B.      **Law Applicable to Motions to Dismiss Under Fed. R. Civ. P. 9(b).**

A party asserting a claim for fraud is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b) (as incorporated by Fed. R. Bankr. P. 7009). *See Wagner v. Cunningham (In re Vaughan Co., Realtors)*, 481 B.R. 752, 757 (Bankr. D. N.M. 2012) (party asserting claim under Section 548(a)(1)(A) must plead fraud under the 9(b) heightened pleading standard); *Tronox, Inc. v. Anadarko Petroleum Corp. (In re Tronox, Inc.)*, 429 B.R. 73, 92 (Bankr. S.D.N.Y. 2010), (allegations of fraud must be pled with particularity under Rule 9(b) and such requirement protects "the defending party's reputation, discourage[s] meritless accusations, and provide[s] detailed notice of fraud claims to defending parties"); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (actual fraudulent transfer claims must meet the heightened pleading requirements of Rule 9(b) whether brought under the Bankruptcy Code or applicable New York fraudulent transfer law). Under Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud . . . [though] [m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

6

As the Tenth Circuit has explained it:

> [C]laims comply with Rule 9(b) when they "provid[e] factual allegations regarding the who, what, when, where and how of the alleged claims." . . . But, "in determining whether a plaintiff has satisfied Rule 9(b), courts may consider whether any pleading deficiencies resulted from the plaintiff's inability to obtain information in the defendant's exclusive control." . . . This reflects the principle that "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim."

*U.S. ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018) (internal citations omitted).

### V.     Factual Allegations in the Complaint.

Based upon the foregoing legal standards, the focus of the Court's inquiry for the Motion to Dismiss is on the "well-pleaded facts" alleged in the Complaint. The Court notes that the Judgment is central to the Complaint and incorporated into the Complaint by attachment. The Complaint asserts, among other things, the following facts (quoted verbatim):

> 3.     Plaintiff INDVR Canada is a public British Columbia corporation, with its principal office headquartered at DLA Piper (Canada) LLP, Suite 2800, 666 Burrard Street, Vancouver, BC V6C 2Z7, British Columbia, CA.
>
> 4.     Plaintiff INDVR U.S. is a Colorado corporation, with its principal place of business at 4809 Colorado Blvd., Denver, CO 80216. INDVR U.S. is a wholly owned subsidiary of INDVR Canada.
> . . . .
>
> 10.     On May 10, 2024, the Denver District Court issued findings of fact and judgment in favor of INDVR and against the Mascios on INDVR's claims for Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, Breach of the Duty of Loyalty, and Conspiracy to commit theft, among others. *See* Exhibit 1 (the "May 10 Judgment").
>
> 11.     The Denver District Court initially issued a judgment in favor of INDVR and against the Mascios (jointly and severally with their co-conspirators) in the amount of $37,398,774.04; plus pre-judgment interest at the rate of 8% per annum, compounded annually, from January 12, 2021 to the date of the Judgment; plus post-judgment interest at the rate of 8% per annum, compounded annually until the judgment is paid; plus reasonable attorneys' fees. *Id.* at 30.

12. On June 18, 2024, the Denver District Court granted INDVR's Motion to Amend to allow for the trebling of certain damages and ordered INDVR to submit a proposed form of amended judgment. *See* Exhibit 2. INDVR submitted a proposed form of amended judgment. *See* Exhibit 3. The Denver District Court did not enter the proposed form of the amended judgment prior to the Debtor filing her first petition for bankruptcy under Chapter 7 of the Bankruptcy Code.

13. As of the date of the filing of this Complaint, the Colorado Court of Appeals has scheduled briefing on Mrs. Mascio's appeal.

14. As discussed in greater detail in the May 10 Judgment, Mrs. Mascio was the Owner of Cannabis Corp., a licensed marijuana producer and retail dispensary in Denver.

15. Between 2017 and 2020, INDVR and Cannabis Corp. had largely overlapping officers, with Mr. Mascio acting as the CEO of both companies, and Mrs. Mascio as the nominal owner of Cannabis Corp.

16. INDVR raised public funds to purchase equipment that it leased to Cannabis Corp., to enter leases that it sublet to Cannabis Corp., and to finance Cannabis Corp. in other ways.

17. INDVR and Cannabis Corp. further agreed that INDVR would buy Cannabis Corp. for a nominal amount when state law changed in Colorado to allow out-of-state investors to own in-state Cannabis businesses (such as Cannabis Corp).

18. Later, INDVR and Cannabis Corp. entered a merger agreement, albeit at terms that were far more favorable to Cannabis Corp. than initially anticipated.

19. While Mrs. Mascio was still Owner of Cannabis Corp., Mrs. Mascio conspired with Mr. Mascio and others to forgive receivables owed by Cannabis Corp. to INDVR for no benefit to INDVR (thus benefitting Mrs. Mascio and her company).

20. Mrs. Mascio also conspired with her husband and others to fraudulently induce INDVR into a merger agreement by failing to disclose that she did not own her Cannabis Corp. shares outright, and that the shares were subject to return to the original owner in the event of a default (which actually occurred in the summer of 2020).

21. After the execution of the merger contract, but prior to the merging of the companies, Mr. Mascio resigned as CEO of INDVR after it was

8

discovered that he had forged documents that purported to encumber the INDVR shares of his co-founder, Brad Harris.

22. Mr. Mascio, however, continued as CEO of Cannabis Corp.

23. As laid out in detail in the May 10 Judgment, Mrs. Mascio schemed with Cannabis Corp., Mr. Mascio, Patrick Rinker, and a fourth individual (Theresa Mohan) to starve INDVR of its funds, including by stealing the equipment owned by INDVR that was at the Cannabis Corp. facility, to cause Cannabis Corp. to wrongfully breach its merger contract with INDVR, to use INDVR funds for inappropriate personal uses, and to cause Cannabis Corp. to refuse to pay outstanding amounts owed to INDVR.

24. The Denver District Court found, among other things, that Mrs. Mascio aided and abetted Mr. Mascio, Mr. Rinker and Ms. Mohan's breaches of fiduciary duty to INDVR, and conspired with the other co-defendants to commit theft, among other things.

25. The Denver District Court found, among other things, that the Mascios were diverting funds from Cannabis Corp. that should have been used to pay INDVR to instead pay a Cook Islands Trust (the "JG Family Trust" or "Trust") that was controlled by the Debtor and Mr. Mascio, for which Mr. Rinker was the purported Trustee.

26. The Mascios have spent nearly a decade attempting to evade creditors by hiding their assets, including in particular through the JG Family Trust.

27. The Mascios have not disclosed the assets in the JG Family Trust as their own, nor have they disclosed the full extent of their assets. On information and belief, the Mascios have kept undisclosed cryptocurrency through JG Family Trust, shares of INDVR, and have moved at least some of JG Family Trust's assets offshore.

28. The Mascios are both settlors and beneficiaries of the JG Family Trust. Mr. Rinker was at one time the trustee, but he has never been an independent party and has been Mr. Mascio's employee and agent.

29. The Mascios have essentially retained control over all of the assets in the JG Family Trust, ignored legal formalities, used the property in the trust as their own, and treated the property therein as their own property rather than that of the nominal owner.

30. At a Rule 69 deposition incident to collection efforts by another creditor, Mr. Mascio admitted that he had placed all of his assets and

Debtor's assets into the Cook Islands Trust specifically for the purpose of evading creditors.

31. Referring to the Washington state court judgment of the other creditor, Mr. Mascio testified, "When you get people that think they can go run down to court and get some clown judge in Washington to award them 1 million 5 when they don't deserve it, it serves its purpose. That's the way I see it."

32. In addition, the Mascios fraudulently transferred hundreds of thousands of dollars into the Trust, while INDVR's lawsuit was pending, including fraudulent transfers of about $175,000 from Cannabis Corp. to the Trust that are not reflected in Cannabis Corp.'s books and records. To justify this payment, the Mascios falsified invoices in which they said they performed consulting when, in fact, no such consulting was performed.

33. While Mr. Mascio was CEO of INDVR, he would also direct that INDVR place his salary and equity into the Trust, rather than his personal account, in an obvious attempt to get around his obligation to pay his outstanding creditors.

34. These fraudulent transfers were the basis for the imposition of a receivership for Cannabis Corp. by a separate Denver District Court.

35. Notably, the Mascios do not reveal in their financial statements filed with their Bankruptcy Petitions any of the assets associated with the JG Family Trust. They are concealing the actual source of their wealth and hindering and delaying creditors, as they have for years.

. . . .

38. In particular, the Debtor has concealed her assets through the use of the JG Family Trust – or otherwise permitted her husband to conceal those assets.

39. The Debtor did so with the intent of hindering, delaying, or defrauding INDVR and other creditors.

40. On information and belief, other assets exist that have not been disclosed, including without limitation, cryptocurrency and assets that have been moved offshore.

. . . .

44. In particular, the Debtor has concealed information relating to the JG Family Trust, including payments into and out of that trust that were received by the Mascios and/or their agents.

10

45. On information and belief, the Debtor has also concealed information about other assets, including without limitation cryptocurrency and assets that have been moved offshore.

. . . .

48. The Debtor knowingly and fraudulently, in or in connection with the case made a false oath or account. In particular, the Debtor has falsely certified her schedules without identifying the assets or income associated with the JG Family Trust, cryptocurrency and assets that have been moved offshore.

. . . .

51. The Debtor's debt to INDVR arises from, among other things, from her conspiracy with her husband and others to commit fraud or defalcation in a fiduciary capacity, embezzlement or larceny.

52. In particular, the debt arises in part from (a) the retention of Cannabis Corp. money for their own ends, rather than to pay INDVR the amounts it was owed, despite having a fiduciary duty to INDVR, and (b) retaining INDVR's equipment despite being required to return it on demand.

. . . .

56. In particular, the Debtor's debt to INDVR arises from the Debtor's fraudulent statement that she owned her interest in Cannabis Corp. outright and her failure to disclose that her interest was still subject to a debt to the prior owner.

57. The Debtor's debt to INDVR also arises from her conspiracy with others to commit theft of INDVR's equipment, and to direct payments from INDVR to Cannabis Corp.

As noted previously, when considering a motion to dismiss under Fed R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded factual allegations in a complaint and view them in the light most favorable to the plaintiff. *Burnett*, 706 F.3d at 1235.

## VI. <u>Legal Analysis</u>.

The Motion to Dismiss does attack the claims asserted by the Plaintiffs in the Complaint on a claim by claim or element by element basis. Instead, the Debtor asserted six cursory and general arguments for dismissal. The Court addresses each of the arguments in turn.

A. <u>**The Complaint Should Not be Dismissed for Alleged Lack of Standing and Capacity to Sue**</u>.

In the Motion to Dismiss, the Debtor argued:

> Plaintiff INDVR Brands, Inc. is not an active public Canadian corporation as alleged. Public records show that it was delisted over two years ago, has no employees, no revenue, and does not engage in legitimate business operations. Its only activity is the pursuit of litigation through Fortis Law Partners. Such an entity lacks standing to assert claims under 11 U.S.C. §§ 523 or 727 because it has no actual injury or ongoing financial operations.

(Docket No. 5 at 2.)

The Debtor's position is not well-taken. Per the Supreme Court:

> For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.

*Warth v. Seldin*, 422 U.S. 490, 501 (1975) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969).

In the Complaint, the Plaintiffs asserted:

> 3. Plaintiff INDVR Canada is a public British Columbia corporation, with its principal office headquartered at DLA Piper (Canada) LLP, Suite 2800, 666 Burrard Street, Vancouver, BC V6C 2Z7, British Columbia, CA.
>
> 4. Plaintiff INDVR U.S. is a Colorado corporation, with its principal place of business at 4809 Colorado Blvd., Denver, CO 80216. INDVR U.S. is a wholly owned subsidiary of INDVR Canada.

(Docket No. 1 at 2.) The Judgment, which is incorporated as part of the Complaint, also states:

> INDVR CN is a Canadian company and a publicly listed British Columbia corporation with its registered office in Vancouver, British Columbia.
>
> INDVR US is a Colorado corporation with its principal place of business in Denver, Colorado.

(Docket No. 1-1 at 3.) And, in the Judgment, the State Court held the Debtor liable for $37,398,774.04 in damages, plus interest. Later, the State Court increased the amount of the Judgment.

Based on the foregoing, which the Court must accept as true at this stage, the Plaintiffs are creditors of the Debtor. 11 U.S.C. § 101(10)(A) ("The term 'creditor' means . . . entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor.") Creditors plainly have standing to pursue Section 727 and 523(a) claims against bankruptcy debtors. 11 U.S.C. §§ 523(c)(1) and 727(c)(1).

The Debtor's arguments against standing are not proper in the motion to dismiss context. The Debtor seems to dispute factually whether INDVR Canada is an "active" Canadian company and has "ongoing financial operations," such as employees, revenue, and operations. Sobeit. However, the foregoing merely contests the factual allegations in the Complaint. For now, the Court must accept the well-pleaded factual allegations in the Complaint as true which plainly establish the Plaintiffs' standing. *Warth*, 422 U.S. at 501; *Brokers' Choice of Am.,* 757 F.3d 1135; *Integra*, 952 F.2d at 1261. The Debtor's submission of extraneous records (affidavits contesting factual allegations in the Complaint) is of no moment because generally the Court must consider only what is within the four corners of the Complaint. *Howsam*, 261 F.3d at 961; *Integra*, 952 F.2d at 1261 (court "cannot review matters outside of the complaint."); *Glanz*, 948 F.2d at 1565 (same). If the Debtor wishes to contest the Plaintiffs' factual allegations, she may do so through her answer, a dispositive motion compliant with the applicable procedural rules (if appropriate), or at trial. But, now is not the time. Furthermore, the Court is unaware of any applicable law which tethers standing to employment of employees, revenue, and operations. In any event, the Debtor's cursory and superficial standing argument in the Motion to Dismiss is totally unsupported. The Debtor cited no caselaw, statute, or procedural rule supporting dismissal of the Complaint. So, the Court rejects the Debtor's standing argument in the Motion to Dismiss.

B. **The Complaint Should Not be Dismissed for an Alleged Misrepresentation About an Address.**

In the Motion to Dismiss, the Debtor argued:

> The Complaint lists a principal business address (4809 Colorado Blvd., Denver, CO) that is a vacant or unoccupied building. Plaintiffs never owned or operated from this location, and used it to falsely suggest a Colorado nexus and operational legitimacy. This misrepresentation is material to venue, jurisdiction, and the plausibility of their claims.

13

(Docket No. 5 at 2.) In the Complaint, the Plaintiffs asserted (as of the date of the Complaint): "Plaintiff INDVR U.S. is a Colorado corporation, with its principal place of business at 4809 Colorado Blvd., Denver, CO 80216." (Docket No. 1 at 2.)

Regardless of the Debtor's quarrel with the street address for INDVR U.S., the Court must accept the well-pleaded factual allegations in the Complaint as true. *Warth*, 422 U.S. at 501; *Brokers' Choice of Am.,* 757 F.3d 1135; *Integra*, 952 F.2d at 1261. So dismissal is quite unwarranted at this stage based upon the address issue. The Court also observes that the "Colorado nexus and operational legitimacy" argument suggested by the Debtor is quite beside the point and has nothing to do with venue, jurisdiction, and plausibility of claims. The Court's jurisdiction and venue stem from the Debtor filing for Chapter 7 liquidation in Colorado; not the location of the Plaintiffs. 28 U.S.C. §§ 1334, 1408, and 1409. In any event, an address discrepancy (even if present) is no basis for dismissal of the Complaint.

C. **The Complaint Should Not be Dismissed for Failure to State a Claim.**

In the Motion to Dismiss, the Debtor argued:

> The Complaint is based on vague, conclusory allegations of fraudulent transfers, concealment of assets, and bankruptcy fraud, none of which are supported by specific facts. There are no dates, amounts, or transactions identified, nor are there documents attached to substantiate the core claims. As such, the Complaint fails to meet the pleading standard established by Ashcroft v. Iqbal and Bell Atlantic Corp. v. Twombly.

(Docket No. 5 at 2.)

The Debtor's foregoing three-sentence Fed. R. Civ. P. 12(b)(6) argument is totally generic and undeveloped. The Debtor also did not tie its position to any specific claims or elements of claims. Accordingly, the Debtor has functionally waived such argument.

However, the Court delves just a bit deeper. In the Complaint, the Plaintiffs asserted three claims for denial of discharge — under Sections 727(a)(2), (a)(3), and (a)(4)(A). Those provisions state:

> The court shall grant the debtor a discharge, unless—
> . . .
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed,

14

>   mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
>   (A) property of the debtor, within one year before the date of the filing of the petition; or
>
>   (B) property of the estate, after the date of the filing of the petition;
>
>   (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case;
>
>   (4) the debtor knowingly and fraudulently, in or in connection with the case —
>
>   (A) made a false oath or account. . . .

11 U.S.C. §§ 727(a)(2), (a)(3) and (a)(4)(A). Put another way, "[t]he debtor must deal fairly with creditors and with the court. This obligation is imposed indirectly through a series of objections to discharge set out in Code § 727(a). Thus, § 727(a) provides a mechanism for proof of certain conduct by a debtor that may result in a denial of discharge." *In re Gordon*, 526 B.R. 376, 387-88 (10th Cir. BAP 2015).

The Plaintiffs' Section 727(a) claims are centered on the "JG Family Trust" (as defined in the Complaint). The Plaintiffs contend that the Debtor "has concealed her assets through the use of the JG Family Trust"; "has concealed information relating to the JG Family Trust, including payments into and out of that trust"; and "falsely certified her schedules without identifying the assets and income associated with the JG Family Trust." (Docket No. 1 at 7-8.)

In the Complaint, the Plaintiffs presented numerous well-pleaded factual allegations about the JG Family Trust under the heading: "The Debtor's Improper Use of the Cook Islands Trust." (Docket No. 1 ¶¶ 26-35.) The factual allegations include that the Debtor is a settlor and beneficiary of the J.G. Family Trust and that the Debtor has "essentially retained control over all of the assets of the JG Family Trust, ignored legal formalities, used the property in the trust as [her] own, and treated the property as [her] own property . . . ." (*Id.* ¶ 29.) The Plaintiffs identified "hundreds of thousands of dollars" of fraudulent transferred into the JG Family Trust. (*Id.* ¶ 32.) The basic premise is that the Debtor is allegedly concealing assets and has given a false oath regarding her assets.

15

As noted earlier, a proper complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is considered "plausible" when the complaint contains facts which allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ultimately, the critical question is: "assum[ing] the truth of all well-pleaded facts . . . and draw[ing] all reasonable inferences therefrom in the light most favorable to the plaintiffs," whether the complaint "raise[s] a right to relief above the speculative level.'" *Dias*, 567 F.3d at 1178. It is a very low threshold.

The Court determines that the Plaintiffs have passed the very low Fed. R. Civ. P. 12(b)(6) dismissal threshold with respect to their claims under Sections 727(a)(2), (a)(3) and (a)(4)(A). The Debtor plainly is on notice of the factual basis for the claims: that she has allegedly concealed assets and transfers to the J.G. Family Trust and lied on her bankruptcy schedules in relation to the J.G. Family Trust. Again, "granting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias*, 567 F.3d at 1178. Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

In addition to the Section 727(a) claims, the Plaintiffs also asserted two variants of nondischargeability: Sections 523(a)(4) and (a)(6). Those provisions state:

> (a) A discharge under section 727 , , ,, does not discharge an individual debtor from any debt —
> . . . .
> > (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
> . . . .
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

The Section 523(a) claims are premised upon the debt set forth in the Judgment (which is incorporated as part of the Plaintiffs' factual allegations). The State Court found the Debtor liable for aiding and abetting breach of fiduciary duty and civil conspiracy to the tune of more than $37,398,774.04, plus interest. Coupled with the other factual allegations set forth in the Complaint, the foregoing is more than enough to state a plausible claim for nondischargheability under Sections 523(a)(4) and (a)(6). Dismissal under Section 12(b)(6) is not warranted.

D. **The Complaint Should Not be Dismissed for Failure to Plead Fraud with Particularity.**

In the Motion to Dismiss, the Debtor argued:

> Under Rule 9(b), a plaintiff must state with particularity the circumstances constituting fraud. The Complaint lacks specific detail about any allegedly false statements, who made them, when they were made, or how they were misleading. Allegations made solely 'on information and belief' are not enough to meet this standard.

(Docket No. 5 at 2.)

The Debtor's foregoing three-sentence Fed. R. Civ. P. 9(b) argument is totally generic and undeveloped. The Debtor also did not tie her position to any specific claims or elements of claims. Accordingly, the Debtor has functionally waived such argument.

However, the Court considers the issue further. All of the claims advanced by the Plaintiffs (under both Sections 727(a) and 523(a)) are based on forms of alleged fraud. So, the Plaintiffs were obligated to plead fraud with particularity under Fed. R. Civ. P. 9(b). The Court assesses that the Plaintiffs met that standard at the motion to dismiss stage. The core requirement of Fed. R. Civ. P. 9(b) is that "the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *St. Mark's Hosp.*, 895 F.3d at 745. The Complaint (coupled with the incorporated Judgment) is more than enough to put the Debtor on notice of the nature of the claims.

E. **The Complaint Should not be Dismissed Based Upon an Issue Preclusion Argument.**

In the Motion to Dismiss, the Debtor argued:

> Plaintiffs rely heavily on a judgment entered by the Denver District Court to support their claims. However, that judgment is currently under appeal. It is well established that issue preclusion (collateral estoppel) does not apply to judgments that are not final. See In re Duncan, 448 F.3d 725 (4th Cir. 2006); Stoll Oil Refining Co. v. Commissioner, 447 F.2d 939 (10th Cir. 1971). Plaintiffs cannot rely on findings or conclusions from a judgment that may be reversed or modified on appeal.

(Docket No. 5 at 3.)

The Debtor's four-sentence argument about issue preclusion or collateral estoppel is no reason for dismissal of the Complaint. It is premature. The Plaintiffs have not asked the Court to find that the Judgment has preclusive effects in the Adversary Proceeding. (At this stage, the Judgment serves only as part of the Plaintiffs' factual allegations.) So, dismissal is unwarranted.

17

**F.    The Complaint Should not be Dismissed Based Alleged Bad Faith and Lack of Evidentiary Support.**

In the Motion to Dismiss, the Debtor argued:

> The Complaint contains numerous allegations made 'on information and belief' without factual support. There is no documentary evidence cited to support the central allegations of fraudulent transfers, concealment, or trust control. The Complaint appears designed solely to harass and burden the Defendant during bankruptcy. Such conduct warrants dismissal or striking of the pleading under Rules 11 and 12(f).

(Docket No. 5 at 3.)

The Debtor's argument, which is premised entirely on Fed. R. Civ. P. 11 and 12(f), is without merit. As noted previously, the Debtor's request for sanctions under Fed. R. Bankr. P. 9011 (Fed. R. Civ. P. 11 does not apply in this Adversary Proceeding) is procedurally defective because: (1) the Debtor did not present its request for sanctions as a separate motion; and (2) the Debtor did not establish compliance with the safe harbor provision. Fed. R. Bankr. P. 9011(c)(2)(A) and (c)(2)(B); *Johnson*, 485 B.R. at 649; *Caskie–Johnson,* 2007 WL 496675, at *3. And, Fed. R. Civ. P. 12(f) has not been properly invoked by the Debtor either.

In any event, the Debtor appears to misapprehend the nature of a complaint and an initial motion to dismiss. The Complaint does not need to include all of the Plaintiffs' documentary evidence. Evidence is presented at trial; and the Debtor will have an opportunity to contest it then and there. Meanwhile, the Debtor's suggestion that the Complaint was "designed solely to harass and burden" the Debtor is unsupported and not a basis for dismissal of the Complaint.

## VI.    Conclusion and Order.

For the foregoing reasons, the Court DENIES the Motion to Dismiss.

The Court FURTHER ORDERS that the Debtor shall file a responsive pleading to the Complaint within 14 days of the entry of this Order as provided for by Fed. R. Bankr. P. 7012(a).

DATED this 8th day of August, 2025.

BY THE COURT:

*Thomas B. McNamara*
Thomas B. McNamara,
United States Bankruptcy Judge